# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

**In Re**

DEAN R. JACKSON, SR. aka
BOB JACKSON dba JACKSON
CARPETS dba JACKSON
ENTERPRISES and PEGGY J.
JACKSON,

**Bankruptcy Case
No. 04-40542-JDP**

**Debtors.**

_____

## MEMORANDUM OF DECISION

_____

### Introduction

In two motions, chapter[1] 13 debtors Dean and Peggy Jackson ("Debtors") seek an order setting aside a money judgment which was entered against them in state court, and avoiding any lien that attached to

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9036, in effect prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

MEMORANDUM OF DECISION - 1

their real property when their creditor, Mountain States Marketing and Sales ("Mountain States") recorded the judgment. *See* Docket Nos. 171, 174. The motions came on for hearing on December 23, 2008. L.D. Fitzgerald, the chapter 13 trustee,[2] and counsel for Debtors[3] and Mountain States appeared and offered argument. The Court took the motions under advisement, and as allowed by the Court, Mountain States and Debtors submitted post-hearing briefs. Docket Nos. 192, 193. This memorandum constitutes the Court's findings and conclusions,[4] and disposes of the issues raised by the motions.

**Facts**

Debtors filed a petition for relief under chapter 13 on March 19, 2004. Docket No. 1. Among its terms, their chapter 13 plan proposed

---

[2] Following the hearing, on December 30, 2008, L.D. Fitzgerald retired and resigned from his position as the chapter 13 trustee assigned to this case. Kathleen McCallister was appointed by the U.S. Trustee to serve as the successor chapter 13 trustee. Docket No. 186.

[3] Because of inclement weather, counsel for Debtors appeared by telephone.

[4] *See* Fed. R. Bankr. P. 7052; 9014.

MEMORANDUM OF DECISION - 2

payments to the trustee over 60 months funded by income from Debtors' flooring business. The plan also contained a "check-the-box" option regarding vesting of property of the estate, in which Debtors selected the box which provided that "upon confirmation of this plan, all property of the estate . . . [s]hall vest in the debtor[.]" Docket No. 11.[5] The Court entered an order confirming Debtors' chapter 13 plan on June 30, 2004. Docket No. 23.

Following confirmation, Debtors continued to operate their business. In 2006, Mountain States sold materials and supplies to Debtors on credit. Debtors failed to pay for these goods. In March 2007, while Debtors were still performing their plan, Mountain States filed suit against Debtors in state court to recover the post-petition debt. Mountain States took this action without seeking relief from the automatic stay from this Court. In October, 2007, Mountain States and Debtors stipulated that a money judgment could be entered by the state court against Debtors in

---

[5] This District utilizes a "model" chapter 13 form plan. LBR 2002.5(e). The check-the-box feature in Debtors' plan regarding vesting of property was consistent with the model plan.

MEMORANDUM OF DECISION - 3

favor of Mountain States for $19,783.03 plus interest.  After entry, on November 5, 2007, Mountain States recorded the judgment in Lemhi County.

When they filed their chapter 13 case, Debtors owned a home in Lemhi County.  In addition, after confirmation, Debtors inherited two other parcels of real property in Lemhi County, the first in April 2007, approximately one month after Mountain States had sued them, and the second in October 2008, about one year after the judgment was entered in that state court action.  Mountain States asserts a statutory judgment lien[6] against the inherited properties and the Debtors' home.

**Discussion**

I.

As noted at the hearing, the Court construes both of Debtors' motions as, collectively, a request that the Court order Mountain States' judgment liens avoided as against the two properties that Debtors

---

[6] Idaho Code § 10-1110 provides that when a judgment is recorded, it becomes a lien on all real property owned or thereafter acquired by the judgment debtor in that county.

MEMORANDUM OF DECISION - 4

inherited after their chapter 13 plan was confirmed. As explained in their motions and at the hearing, Debtors believe that, when they acquired them, these properties became property of their bankruptcy estate pursuant to § 1306(a). Debtors argue therefore, that Mountain States' actions in recording the judgment and thereby creating a statutory lien against the inherited properties was a violation of the automatic stay, in particular, §§ 362(a)(3), (4), and (5). Mountain States contends that, based upon the provisions of the their confirmed plan, these properties vested in Debtors, not the bankruptcy estate, and therefore its act of recording the judgment and creating the liens did not violate the stay, and its judgment liens are valid.

II.

A.

The automatic stay protects property of the bankruptcy estate from attachment or execution by a bankruptcy debtor's creditors, including post-petition creditors. 11 U.S.C. § 362(a)(3); *In re MacConkey*, 96.4 I.B.C.R. 152, 153 (Bankr. D. Idaho 1996). The automatic stay continues in effect

MEMORANDUM OF DECISION - 5

until property is no longer property of the estate. 11 U.S.C. § 362(c). Thus, with respect to the two parcels of property which Debtors acquired after their chapter 13 plan was confirmed, the critical question is whether those properties became part of the bankruptcy estate.

Under the Code, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, in the context of a chapter 13 case, the bankruptcy estate also includes "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . ." 11 U.S.C. § 1306(a)(1). If these provisions control, it would seem clear that the inherited real properties became property of the bankruptcy estate.

However, the Code also provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). As indicated above, by checking the box, Debtors' confirmed plan provides that "upon confirmation of this plan, all property of the

MEMORANDUM OF DECISION - 6

estate . . . [s]hall vest in the debtor[.]" Docket No. 11. As a result, under their plan, all property of the estate revested in Debtors upon confirmation of their plan. But this observation begs the critical question here: was the property that "revested" only that property which existed at the time of confirmation, or does § 1327(b) and Debtors' plan provision also apply to property which they acquired after confirmation?

A variety of interpretations have been offered in the bankruptcy courts to address the seeming tension between § 1306(a) and § 1327(b). Some courts hold that gifts, inheritances, and causes of action acquired by a chapter 13 debtor post-confirmation become property of the bankruptcy estate, but others disagree. *See In re Wetzel*, 381 B.R. 247, 252 (Bankr. E.D. Wis. 2008) (collecting cases). However, neither the Ninth Circuit nor this Court have specifically addressed whether assets acquired by a debtor after confirmation of a plan but before the case is closed, dismissed or converted, should be treated as property of the estate.[7]

---

[7] To be sure, the Court has addressed a similar issue involving a debtor's post-petition earnings. *See, e.g., In re MacConkey*, 96.4 I.B.C.R. 152, 153 (Bankr. D. Idaho 1996) (finding that the automatic stay will not generally protect a debtor's

MEMORANDUM OF DECISION - 7

As the bankruptcy court in *In re Wetzel* explained, to reconcile any conflict between § 1306(a) and § 1327(b), courts have adopted three basic approaches. Under the first, courts hold that the bankruptcy estate is extinguished when, by operation of a provision in a confirmed plan, property vests in the debtor upon confirmation. *See Oliver v. Toth (In re Toth)*, 193 B.R. 992 (Bankr. N.D.Ga. 1996); *In re Mason*, 45 B.R. 498 (Bankr. D. Or. 1984), *aff'd*, 51 B.R. 548 (D. Or. 1985). Under this approach, any property acquired by the debtor post-confirmation would no longer be protected by the automatic stay.

In stark contrast, other courts construe these statutes to provide that the bankruptcy estate continues in existence until the case is either closed, dismissed, or converted. However, according to these decisions, if the plan so provides, property in existence at the time of confirmation is "emptied" from the estate and revested in the debtor. The estate is then "refilled" with any property acquired by the debtor post-confirmation. *In*

---

post-petition wages from post-bankruptcy creditor collection efforts); *see also In re Rhodes*, 95 I.B.C.R. 91 (Bankr. D. Idaho 1995).

MEMORANDUM OF DECISION - 8

*re Holden*, 236 B.R. 156, 163 (Bankr. D.Vt. 1999); *see also, Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1243 (11th Cir. 2008); *Barbosa v. Soloman*, 235 F.3d 31, 35 (1st Cir. 2000).

The courts adopting the third approach, described by some as the "middle ground," opine that only the post-confirmation property that is necessary to fund the payments under the confirmed plan is property of the estate. *See In re Ziegler*, 136 B.R. 497 (Bankr. N.D. Ill. 1992); *In re Root*, 61 B.R. 984 (Bankr. D. Colo. 1986).

All of these views have been criticized. For example, one court skeptically asks that if the bankruptcy estate is extinguished upon confirmation of the plan, as the first approach suggests, what then does a chapter 13 trustee thereafter administer? *See In re Root*, 61 B.R. at 985. This first approach also seems to ignore § 1306(a), a provision not found in chapter 7, which dictates that the bankruptcy estate continues until a chapter 13 case is closed, converted or dismissed.

In addition, though arguably the most pragmatic resolution, the third approach has been challenged because "no textual basis exists for

MEMORANDUM OF DECISION - 9

distinguishing between post-confirmation property that is 'necessary' and that which is 'not necessary' to funding the confirmed plan." *Annese v. Kolenda (In re Kolenda)*, 212 B.R. 851, 855 (Bankr. W.D. Mich. 1997). Moreover, courts have reached widely different conclusions regarding how broadly "necessary" should be construed in determining whether post-confirmation property should be included in the bankruptcy estate. *Id.* (citing *Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 963 (N.D. Ill. 1997)).

Given these perceived deficiencies in the first and third approaches, many courts gravitate to the second approach, which treats all post-confirmation property as property of the estate. *See United States v. Harcher*, 371 B.R. 254, 268 (Bankr. N.D. Ohio 2007) (describing this approach as the "growing majority"). As one court explained, this interpretation is "consistent with the language of sections 1306(a) and 1327(b), and avoids creating a distinction among types of post-confirmation property where there exists no textual basis to do so." *In re Fisher*, 203 B.R. at 962-63.

This Court agrees with this growing majority that this represents

MEMORANDUM OF DECISION - 10

"the most logical reconciliation of §§ 1306(a) and 1327(b)." *In re Wetzel*, 381 B.R. at 254. As the Court sees it, confirmation of a chapter 13 plan operates to adjust the rights of creditors and the debtor in relation to the assets existing at that time. However, because it necessarily takes years for a debtor to perform a plan, a debtor's acquisition of significant post-petition assets can not be seen to inure solely to the benefit of any post-petition creditors. The Code acknowledges that prebankruptcy creditors, held at bay while the debtor reorganizes, and the trustee, charged with administering the debtor's plan, are justifiably interested in a debtor's changed financial circumstances, including any new acquisitions of property. *See* 11 U.S.C. § 1329(a) (providing that either the debtor, trustee or unsecured claimants can request that a confirmed plan be modified to increase or decrease amount to be paid to creditors under the plan).

Because this interpretation best balances the interests of all creditors, the Court holds that, under § 1327(b), a provision in a confirmed plan that property "revest" in the debtor applies solely to property in existence at the time of confirmation. Any assets acquired by the debtor after

MEMORANDUM OF DECISION - 11

confirmation, but before the case is closed, converted or dismissed, become property of the bankruptcy estate under § 1306(a). In this case, the two parcels of property inherited by Debtors post-confirmation became (and continue to be) property of the bankruptcy estate.

B.

Having determined that Debtors' inherited properties are property of the bankruptcy estate, the Court's focus now turns to the propriety of Mountain States' collection actions. Debtors argue that Mountain States should not have sued them in state court without first obtaining relief from the automatic stay. Debtors also contend that, by recording its judgment, Mountain States created a lien on property of the estate, a further violation of the automatic stay.

Debtors' first contention can be disposed of quickly. At the hearing, in response to the Court's questions, Debtors conceded (correctly) that § 362(a) does not prohibit the prosecution of an action by a creditor against a debtor to collect a post-petition debt. *See* 11 U.S.C. § 362(a)(1) (prohibiting the commencement or continuation of judicial proceedings

MEMORANDUM OF DECISION - 12

against a debtor to "recover a claim against the debtor that arose before the commencement of the [bankruptcy case.]"). Mountain States did not violate the automatic stay by initiating the state court action against Debtors, nor in pursuing that action through entry of a judgment.[8]

However, while the automatic stay did not inhibit Mountain States' collection suit, its attempt to enforce its judgment by imposing a statutory lien against property of the bankruptcy estate was prohibited by § 362(a)(4) (preventing "any act to create, perfect, or enforce a lien against property of the estate[.]"). Under Idaho law, a lien attached to Debtors' inherited properties when Mountain States recorded its judgment in Lemhi County. By recording the judgment, Mountain States engaged in an act to create a lien against property of the bankruptcy estate in violation of the automatic stay. It is settled that acts taken in violation of the automatic stay are void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992); *In re One Hundred Building Corp.*, 97.2 I.B.C.R. 56, 58 (Bankr. D. Idaho 1997).

---

[8] Because the automatic stay was not an impediment to prosecution of Mountain States' lawsuit, the Court need not consider the implications of Debtors' stipulation consenting to the entry of a money judgment against them.

MEMORANDUM OF DECISION - 13

Therefore, Mountain States' recording of the judgment in Lemhi County without first obtaining stay relief was a void act, and any purported lien arising on property of the estate as a result of that action is also void.[9]

C.

Debtors' motions seek to avoid the lien "against real property owned by the Debtors." *See* Docket No. 171. Since this language is broad enough to include Debtors' residence, as well as the two inherited properties, the Court's analysis would be incomplete without a discussion as to the status of the Mountain States judgment lien on Debtors' home.[10]

As previously explained, the two inherited properties became property of the bankruptcy estate pursuant to § 1306(a) when Debtors acquired them, and remain so today. The same is not true, however, of the Debtors' home. When Debtors initiated this bankruptcy case, their home

---

[9] Debtors have not sought damages from Mountain States for this stay violation. *See* 11 U.S.C. § 362(h). The Court offers no opinion as to whether such damages could be recovered under these facts.

[10] Debtors have not sought to avoid Mountain States' judicial lien under § 522(f) as one that impairs their homestead exemption.

MEMORANDUM OF DECISION - 14

became part of the bankruptcy estate pursuant to § 541(a). However, pursuant to the terms of their plan and § 1327(b), the home revested in Debtors upon confirmation, and was thereafter not part of the bankruptcy estate. As a result, the automatic stay did not prohibit the attachment of Mountain States' judgment lien with respect to Debtors' home. *See In re Petruccelli*, 113 B.R. 5, 17 (Bankr. S.D. Cal. 1990) (holding that § 362 did not prevent the IRS from collecting a post-petition debt by levying upon property of the debtor).[11]

## Conclusion

Mountain States did not violate the automatic stay by initiating a lawsuit against Debtors to recover a post-petition debt. However, because the inherited properties were acquired by Debtors after confirmation of their plan, they became property of the estate by operation of § 1306(a). When Mountain States recorded its judgment in Lemhi County without

---

[11] Debtors' argument that the Mountain States judgment lien should be avoided as to their home as an unauthorized post-petition transfer of property of the estate under § 549(a) lacks merit, again, because when that lien attached, Debtors' home was not property of the estate.

MEMORANDUM OF DECISION - 15

first obtaining relief from this Court to do so, it created a lien which attached to property of the estate in violation of § 362(a)(4). Therefore, the Mountain States judgment lien is void with respect to the inherited properties.[12]

On the other hand, since Debtors owned their house at the time their plan was confirmed, and since their confirmed plan provides that all property of the estate "revested" in Debtors upon confirmation, that house was not property of the bankruptcy estate when Mountain States recorded its judgment. Accordingly, Mountain States' judgment lien against Debtors house is not void.

Counsel for Debtors shall submit an appropriate order, consistent with this decision, for entry by the Court. Counsel for Mountain States

---

[12] As explained above, the automatic stay prohibits Mountain States from attempting to create or enforce liens on property of the bankruptcy estate, including the inherited properties. However, this chapter 13 case appears to be quickly drawing to a close. The automatic stay will terminate when the case closes, and Debtors' inherited properties are no longer property of the estate. 11 U.S.C. § 362(c)(1). Presumably, at that time, Mountain States can again act to enforce its judgment against Debtors' properties without impediment of the Bankruptcy Code.

MEMORANDUM OF DECISION - 16

shall approve the form of the order.

Dated: March 5, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 17